Janet **MITCHELL, Individually and as Personal Representative and Heir of the Estate of Mike Mitchell, Deceased; Janet Mitchell, as Next Friend of Valerie Nicole Mitchell and Clayton Lee Mitchell, her Minor Children; and Dale Mitchell, Appellants,**

v.

**AMARILLO HOSPITAL DISTRICT d/b/a Northwest Texas Hospital; Raymond A. Martin, M.D., Individually and in His Official Capacity as Medical Director of the Department of Anesthesia of Amarillo Hospital District d/b/a Northwest Texas Hospital; and Raymond A. Martin, M.D., P.A., Appellees.**

No. 07–91–0007–CV.

Court of Appeals of Texas, Amarillo.

May 28, 1993.

Rehearing Overruled July 20, 1993.

Tim Hoffman, Hoffman, Sheffield & Sauseda, Amarillo, Edward J. Tuddenham, Austin, for appellants.

James A. Besselman, Kelly Utsinger, Kevin Parker, Underwood, Wilson, Berry, Stein & Johnson, P.C., Thomas C. Riney and Kenneth S. Muncy, Gibson Ochsner & Adkins, Amarillo, for appellees.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

Janet Mitchell, individually and as personal representative and heir of the estate of Mike Mitchell, deceased, and as next friend of Valerie Nicole Mitchell and Clayton Lee Mitchell, her minor children, and Dale Mitchell (the Mitchells) present a nine-points-of-error attack on the orders entered by the trial court, dismissing their causes of action alleged under 42 U.S.C. § 1983, the United States Constitution, 21 U.S.C. § 801, *et seq.*, and the Texas Constitution, granting summary judgment, and dismissing their claims for loss of consortium and mental anguish damages allegedly suffered prior to the death of Mike Mitchell. On the rationale to be expressed, we will overrule the points of error and affirm the final judgment of the trial court.

The intricate pattern of the underlying cause, a consolidation of two suits, necessitates an extended narration. The events giving rise to the cause began with Mike Mitchell's admission to Northwest Texas Hospital on 24 February 1987. His cardiol-

ogist diagnosed a heart condition known as cardiac tamponade. John E.W. Baay, M.D., Mitchell's surgeon, was contacted and, after reviewing an echocardiogram with the cardiologist, decided that surgery was needed as quickly as possible.

James Adamson, a Certified Registered Nurse Anesthetist (CRNA) employed by the Hospital, was designated to perform the anesthesia services required for surgery. He administered anesthesia which caused cardiac arrest. By the time a physician anesthesiologist was called in, Mike Mitchell had suffered almost total brain damage. Mike Mitchell died on 10 January 1990.

Before his death, Janet Mitchell, individually and as guardian and next friend of Mike Mitchell, incompetent, joined by her minor children, Valerie Nicole Mitchell and Clayton Lee Mitchell, filed a district court action, cause no. 69,391–B, under the Medical Liability and Insurance Improvement Act. Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Supp.Pamp.1993). Named as defendants were James Adamson, CRNA (Adamson), John E.W. Baay, M.D., individually and d/b/a John E.W. Baay, a Professional Association (Baay), and Amarillo Hospital District d/b/a Northwest Texas Hospital (the Hospital). The defendants answered and denied liability.

Later, Raymond A. Martin, M.D., individually and in his official capacity as Medical Director of the Department of Anesthesia of Amarillo Hospital District d/b/a Northwest Texas Hospital, and Raymond A. Martin, M.D., a Professional Association (Martin), was named a defendant. Martin filed a general denial.

Subsequently, Janet Mitchell filed her second amended original petition in which she omitted the names, and joinder, of her minor children. In this petition, she alleged that her action was brought pursuant to the laws of the State of Texas, Title 42, sections 1983 and 1988 of the United States Code, and the Fifth and Fourteenth Amendments of the United States Constitution.

On the same day, Janet Mitchell, as next friend of Valerie Nicole Mitchell and Clay-

ton Lee Mitchell, was joined by Dale Mitchell, the decedent's father, to initiate a second action in the district court, cause no. 72,720–B, against Adamson, Baay, the Hospital, and Martin. The Mitchells alleged that this action was brought pursuant to the laws of the State of Texas, Title 42, sections 1983 and 1988 of the United States Code, and the Fifth and Fourteenth Amendments of the United States Constitution.

Answering in cause no. 72,720–B, the Hospital filed special exceptions, a general denial, and interposed as an affirmative defense the limitation of liability under the Texas Tort Claims Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.001, et seq. (Vernon 1986 & Supp. 1993). By its answer, the Hospital specially excepted to the petition because it "fails to allege the deprivation of a federally protected right ... and fails to allege acts or omissions causing Plaintiff's alleged deprivations committed by a person or persons acting under color of state law and therefore does not state a cause of action under 42 U.S.C.1983." The Hospital also specially excepted to the petition where it alleged, or attempted to allege, claims on behalf of the minor children and Dale Mitchell for "care, maintenance, support, services, advice, counsel, contributions of pecuniary value, love, comfort, companionship and society, emotional pain, torment and suffering, interference with the familial relationship, loss of inheritance, grief, and bereavement." The Hospital asserted that no facts were alleged in the petition which would allow for recovery of such damages under Texas law; thus, the petition failed to state a cause of action for such damages.

Similarly, the Hospital filed special exceptions to the amended petition in cause no. 69,391–B, pointing out with particularity that the Mitchell's petition did not state a cause of action under 42 U.S.C. § 1983. The Hospital also specially excepted to the petition where it alleged, or attempted to allege, claims on behalf of Janet Mitchell for "mental pain, anguish, suffering, or emotional injury of any kind." The Hospital asserted that Janet Mitchell had not

alleged any facts which would allow for her recovery of such damages under Texas law; therefore, her petition failed to state a cause of action for such damages.

Following a hearing, the trial court signed separate orders in both causes. By its order in cause no. 72,720–B, the court sustained the special exceptions to the claims for relief under 42 U.S.C. § 1983 and for damages sought by the minor children and Dale Mitchell for care, maintenance, support, services, advice, counsel, contributions of pecuniary value, love, comfort, companionship and society, emotional pain, torment and suffering, interference with the familial relationship, loss of inheritance, grief, and bereavement. By its order in cause no. 69,391–B, the court also sustained the special exceptions to Janet Mitchell's claims for relief under 42 U.S.C. § 1983 and her claims for damages, except for her claim for loss of comfort, companionship and society.

Afterwards, Martin filed motions for summary judgment in both causes. Martin claimed entitlement to judgment as a matter of law on two grounds. First, he was contractually bound by an employment agreement from 1 December 1986 to 1 January 1987, but when confronted with the prospect of extending the terms and conditions of his contract from 1 January 1987 to 1 March 1987, he declined; consequently, although he continued to schedule anesthesia from 1 January 1987 until November of 1987, he was not a party to the contract in question and was only an administrative scheduler. Second, he was not on call during the evening when Mike Mitchell's surgery was performed; therefore, he did not enjoy a doctor-patient relationship with Mike Mitchell on or before his surgery. Hence, Martin declared there was no genuine issue of material fact upon which a cause of action against him could be proved.

The Mitchells responded, urging issues of material fact existed. The facts were whether Martin was acting in his official capacity at the Hospital on 24 February 1987, and concerning the duty Martin owed to Mike Mitchell under the circumstances regardless of the existence of a doctor-patient relationship.

Following the death of Mike Mitchell, the pleadings in both causes were amended to allege causes of action under the wrongful death statute in sections 71.001–.011 of the Texas Civil Practice and Remedies Code Annotated (Vernon 1986), and the survival statute at section 71.021 of the Civil Practice and Remedies Code Annotated (Vernon 1986). Purportedly, the Mitchells realleged their cause of action under 42 U.S.C. § 1983 and their claims for damages allegedly suffered between 24 February 1987 and 10 January 1990. Filing motions to strike and dismiss these claims in both causes, Martin and the Hospital maintained that the amended pleadings indicated the Mitchells' choice to stand by their previous pleadings.

Upon entering its order consolidating the two actions into cause no. 69,391–B, the court signed an order dated 1 June 1990 dismissing the Mitchells' cause of action against the Hospital for civil rights violations under 42 U.S.C. § 1983. By its order, the claims of the minor children and Dale Mitchell for damages occurring prior to the death of Mike Mitchell were stricken. Also struck were the claims of Janet Mitchell in her individual capacity for damages occurring prior to her husband's death, except for her claims for loss of household services and loss of consortium. The court signed an identical order in favor of Martin on 10 July 1990.

Following the appointment of a guardian ad litem to represent the interests of the minor children, the Mitchells filed their First Amended Petition After Consolidation. The guardian ad litem adopted this pleading as his original petition. In this petition, the Mitchells pleaded that they were not making a claim against the Hospital under the Texas Tort Claims Act, *supra*. For causes of action against the Hospital, the Mitchells alleged that its illegal actions and omissions constituted negligence and negligence per se, were a proximate cause and moving force behind the injuries and death of Mike Mitchell, and were a proximate cause and moving force

behind their serious injuries and resulting damages.

For their third cause of action against the Hospital, the Mitchells alleged that its actions "manifested deliberate indifference to Plaintiffs' constitutionally protected rights and constituted conduct shocking to the conscience in violation of plaintiffs' substantive rights under the 5th and 14th Amendments to the United States Constitution and Art. 1 § 13 and § 19 of the Texas Constitution not to be deprived of life and liberty without due process of law." The deliberate indifference on the part of the Hospital, they continued, was a proximate cause and moving force behind the injuries and death of Mike Mitchell and their serious injuries and damages. Relief, the Mitchells claimed, was afforded by the Texas Constitution and 42 U.S.C. § 1983.

As their fourth cause of action against the Hospital, the Mitchells alleged that "[t]he policies, custom and practice of [the Hospital] ... deprived Plaintiffs of their rights to procedural due process under the 5th and 14th Amendments to the United States Constitution and Art. 1 § 13 and § 19 of the Texas Constitution." They stated the procedural due process violations were a proximate cause and moving force behind their serious injuries and damages. Relief was predicated on 42 U.S.C. § 1983.

Presenting their fifth and sixth causes of action, the Mitchells pleaded that the illegal actions and omissions of Martin, individually and in his official capacity as Medical Director of the Department of Anesthesia of the Hospital, constituted negligence and negligence per se, and were a proximate cause and moving force behind the injuries and death of Mike Mitchell and their serious injuries and damages. For their seventh and eighth causes of action, the Mitchells alleged that Martin's actions, individually and in his official capacity, constituted deliberate indifference in violation of plaintiffs' substantive rights and that his actions violated plaintiffs' procedural rights. Relief was sought pursuant to the Texas Constitution and 42 U.S.C. § 1983.

The Mitchells alleged as their ninth cause of action that the Hospital and Martin, acting under color of state law, deprived them of their rights under the Federal Controlled Substances Act. 21 U.S.C. § 801, *et seq.* The violations of the Act, they said, were a proximate cause and moving force behind the injuries and death of Mike Mitchell, as well as the serious injuries and damages suffered by them, for which they claimed relief under the Texas Constitution and 42 U.S.C. § 1983. Their final cause of action alleged that the actions and omissions of Adamson and Baay constituted negligence and that their negligence was a proximate cause of plaintiffs' damages.

Finally, the Mitchells alleged that as a direct and proximate cause of defendants' negligence, illegal actions and deliberate indifference, "Mike Mitchell was caused to enter a persistive vegetative state on February 24, 1987, in which state he remained until his death on January 10, 1990." The Mitchells sought damages occurring during this interim for loss of consortium, mental anguish and interference with constitutionally protected familial relationships.

Again filing special exceptions, the Hospital asserted that as a matter of law, it was a political subdivision of the State of Texas under article 9, section 4, *et seq.* of the Texas Constitution and articles 4494n and 4494q of the Revised Civil Statutes Annotated (Vernon 1976), rather than a municipal corporation of Amarillo, Potter County, Texas. By reason of this status, the Hospital professed it was immune from liability under the doctrine of governmental immunity except for such causes of action within the waiver of immunity by the Texas Tort Claims Act. Because no claim was made under the Texas Tort Claims Act, the Hospital reasoned that the Mitchells' pleadings did not state causes of action upon which any relief could be granted under Texas law.

The Hospital also specially excepted to the Mitchells' petition because it did not state a cause of action under 42 U.S.C. § 1983. In this regard, the Hospital particularly pointed out the Mitchells' failure to allege facts showing that a person was

acting under color of law, and the failure to allege the deprivation of a federally protected right by the abuse of governmental power.

Additionally, a special exception was lodged to the Mitchells' allegations of violations of the Texas Constitution. The allegations did not state a cause of action, the Hospital asserted, since the Texas Constitution does not establish any private cause of action.

Finally, special exceptions were leveled to the Mitchells' ninth-cause-of-action allegation of the violation of the Federal Controlled Substances Act, *supra,* and their first-cause-of-action allegations of violations of the Texas Controlled Substances Act, Tex. Health & Safety Code Ann. §§ 481.001, *et seq.* (Vernon 1992); the Texas Dangerous Drug Act, Tex. Health & Safety Code Ann. §§ 483.001, *et seq.* (Vernon 1992); the Texas Pharmacy Act, Tex. Rev.Civ.Stat.Ann. art. 4542a–1 (Vernon Supp.Pamp.1993); and the Texas Medical Practice Act, Tex.Rev.Civ.Stat.Ann. art. 4495b (Vernon Supp.Pamp.1993). These statutes, the Hospital said, did not grant a private cause of action for a violation.

At the conclusion of a hearing to consider Martin's motion for summary judgment and the special exceptions filed by the Hospital, which Martin adopted in his supplemental answer to the Mitchells' first amended petition after consolidation, the trial judge announced in open court his ruling that the special exceptions were granted. Counsel for the Mitchells and the guardian ad litem then declared that they elected to stand upon their pleadings.

On 19 September 1990, the court rendered a take-nothing summary judgment as to the Mitchells' alleged causes of action against Martin, individually and in his official capacity, and against Martin, M.D., P.A. The court did not specify the ground(s) for its rendition.

On the same day, the court rendered a judgment eliminating the previous joinder of Adamson and Baay, since the Mitchells had settled their claims against them. The court severed the claims and, as to Adamson and Baay, the judgment became final,

*Grossenbacher v. Burket,* 427 S.W.2d 595, 596 (Tex.1968), and they are not parties to this appeal.

By an order signed on 7 November 1990, the court disposed of the Mitchells' remaining claims. Specifically, the court decreed that "all of Plaintiffs' claims against Defendant Amarillo Hospital District and their remaining claims against the Martin Defendants be and the same are hereby DISMISSED."

The Mitchells perfected this appeal to prosecute their claims against the Hospital and Martin on nine points of error. Points one through six address the trial court's 7 November 1990 order, which dismissed their section 1983 claims for denial of rights under the United States Constitution, the Federal Controlled Substances Act and the Texas Constitution. With their seventh and eighth points, the Mitchells challenge the 19 September 1990 take-nothing summary judgment in favor of Martin. By their final point, they attack the 10 July 1990 order of dismissal of their claims for damages against Martin, and the 1 June 1990 order of dismissal of their claims for damages against the Hospital.

■ At the outset, we observe that the Mitchells' appeal is from the 7 November 1990 order. That order became the final judgment since it disposed of all of the remaining parties and issues, thereby merging into it the orders of June 1, July 10, and September 19. *H.B. Zachry Co. v. Thibodeaux,* 364 S.W.2d 192, 193 (Tex. 1963).

■ Initially, the Mitchells contend the trial court erred in granting special exceptions and striking their allegations that the Hospital and Martin acted under color of state law for purposes of 42 U.S.C. § 1983. Of course, when special exceptions are sustained and the pleader elects to stand on his pleadings, the trial court may dismiss the suit if the allegations fail to state a cause of action. *Geochem Lab., Inc. v. Brown & Ruth Lab., Inc.,* 689 S.W.2d 288, 289–90 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Pleadings alone constitute the appellate record to be consid-

ered in determining the propriety of an order of dismissal for failure to amend. *Garver v. First National Bank of Canadian*, 406 S.W.2d 797, 799 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.).

As material in this cause, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

A cause of action under this section involves two essential elements: (1) the conduct complained of was committed by a person acting under a color of state law, and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on another ground*, *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986).

Conduct or action under color of state law requires that a defendant exercise power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, that conduct is also action under color of state law and will support a suit under section 1983. In such circumstances, the defendant's alleged infringement of plaintiff's federal rights, privileges or immunities is fairly attributable to the state. *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988).

To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the state or by a person for whom the state is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor. State employment is generally sufficient to render the defendant a state actor. A defendant in a section 1983 suit acts under color of state law when he abuses the position given to him by the state. Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. 487 U.S. at 49–50, 108 S.Ct. at 2255–56.

Thus, our inquiry becomes whether by their live trial pleadings, the Mitchells alleged a cause of action under the color-of-state-law, or state-action, element of 42 U.S.C. § 1983. If the actions of the Hospital and Martin are not considered state action, our inquiry ends. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982).

The Mitchells insist that they have clearly alleged the Hospital acted under color of state law and that "[t]hese allegations are fully supported by the other averments in [their] petition." The Hospital, they propose, is a public hospital district authorized by the laws of the State of Texas and, as such, its actions were necessarily actions under color of state law for purposes of section 1983. In this regard, they rely on *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173, 174 (5th Cir.1971), and *Frazier v. Board of Trustees of Northwest Miss.*, 765 F.2d 1278, 1284 n. 9 (5th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2252, 90 L.Ed.2d 697 (1986). They cite *Frazier* for the proposition that as a county hospital, Northwest Texas Hospital was a person, since 42 U.S.C. § 1983 requires a "person" acting under color of law.

The *Sosa* appellant brought suit against the Board of Managers of the Val Verde Memorial Hospital, claiming that the Board had violated the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution in denying him admission to the medical staff of the hospital. The Court recognized that the Val Verde Memorial Hospital was a county institution established pursuant to articles 4478 to 4494r–3 of the Texas Revised Civil Statutes Annotated. The

Hospital was constructed, maintained and operated with county funds supplemented by federal aid. It was perfectly clear, the court concluded, that the Board of Managers of the Val Verde Memorial Hospital District was a public body receiving both state and federal funds. Thus, its acts were state acts and were required to comport with the provisions of the Fourteenth Amendment. *Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F.2d at 174.

In the present cause, appellants alleged that the Hospital "was a major trauma center rendering medical services and treatment to citizens in a four State area and holding itself out to the public as a fully staffed and professionally operated hospital with the capability of rendering medically acceptable treatment and care to all who enter its facility." They did not allege that the Hospital was maintained or operated with county funds or supplemented by federal aid; but, by its special exceptions, the Hospital acknowledged that for purposes of the Texas Tort Claims Act, it was a political subdivision under article 9, section 4, *et seq.* of the Texas Constitution and articles 4494n and 4494q of the Revised Civil Statutes Annotated (Vernon 1976).

 Although we are not bound by the decisions of the lower federal courts even though a federal question is involved, *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596, 598 (Tex.Civ. App.—Amarillo 1978, writ ref'd n.r.e.), the *Sosa* rationale is applicable and controlling in this cause. Under article 4494n, Amarillo Hospital District was created by an act of the state legislature, and the governing body of the City of Amarillo was authorized to levy on all property subject to hospital district taxation a tax not to exceed seventy-five cents on the One Hundred Dollars ($100.00) valuation of all taxable property within the hospital district. Act of May 2, 1957, 55th Leg., R.S., ch. 136, § 2, 1957 Tex.Gen.Laws 298, 299. As a county hospital district receiving public funds, the actions of the Hospital were state acts for purposes of the Fourteenth Amendment. *Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F.2d at 174; *Foster v. Mobile County Hospital Board,* 398 F.2d 227, 230 (5th Cir.1968).

The Fifth Circuit has also held that a hospital district, created under article 4494n, is an independent legal entity in relation to the State. *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982), *reh'g denied,* 670 F.2d 181. By the *Laje* rationale, Amarillo Hospital District is an independent legal entity, not a branch of the State of Texas. As a result, the Hospital is a "person" subject to suit under 42 U.S.C. § 1983 and, the state-action requirement of the Fourteenth Amendment being satisfied, the actions of the Hospital are also actions committed by a "person" under color of law. *West v. Atkins,* 487 U.S. at 49, 108 S.Ct. at 2255.

 With respect to Martin, the Mitchells submit that he was sued in his official capacity "for his administrative actions as Medical Director of the Department of Anesthesia." Because he was clothed with the authority of that position at the Hospital, they contend he was able to establish the hospital policies and customs which violated their constitutional rights and, consequently, he also acted under color of state law for purposes of section 1983. In support of their contention, the Mitchells cite *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on another ground, Monnell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 663, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611 (1978); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277 (7th Cir.1986); and *Marin v. Citizens Memorial Hospital,* 700 F.Supp. 354 (S.D.Tex. 1988).

Subsequent to the parties' briefings, the United States Supreme Court held that state officials sued in their individual capacities are "persons" for purposes of 42 U.S.C. § 1983. *Hafer v. Melo,* 502 U.S. ——, ——, 112 S.Ct. 358, 360–61, 116 L.Ed.2d 301, 308 (1991). In so holding, the Court construed 42 U.S.C. § 1983, an act of Congress, and the construction is binding upon us in the disposition of this appeal.

*Winton v. Thompson,* 123 S.W.2d 951, 952 (Tex.Civ.App.—Beaumont 1938, writ ref'd).

The *Hafer* Court explained the distinction between official-capacity and personal-capacity actions. An action against a state official in his official capacity, seeking to impose liability payable from public funds in the state treasury, is treated as an action against the state, and in that situation, neither the official nor the state is a "person" under section 1983. 502 U.S. at ——, 112 S.Ct. at 362–63, 116 L.Ed.2d at 310. To the contrary, an official, when sued in an action to impose individual liability upon him for acting under color of state law and causing the deprivation of a federal right, is in court as an individual, and is a "person" within the statutory term. 502 U.S. at ——, 112 S.Ct. at 361–62, 116 L.Ed.2d at 309.

In this cause, Martin was sued in his official capacity as Medical Director of the Department of Anesthesia for the Hospital, individually and in his corporate capacity as a professional association. Without pausing to address whether the action against Martin in his official capacity was a personal- or an official-capacity suit within the rationale of *Hafer,* it suffices that in his individual and corporate capacities, he was a "person" for the purposes of section 1983. The question, then, is whether he was acting under color of state law. *Hafer v. Melo,* 502 U.S. at ——, 112 S.Ct. at 361–62, 116 L.Ed.2d at 309.

Although Martin testified in his deposition that he did not consider himself an employee of the Hospital, the appellate record reveals this employment agreement: "The Hospital hereby employs the Doctor to furnish to it all services that may be required in organizing, supervising, and operating an anesthesia service for a term of one month commencing on the 1st day of December 1986, through the first day of January 1987." Despite the expiration of the contractual term, Martin's employment continued. Granted that state employment is generally sufficient to render a defendant a state actor, *West v. Atkins,* 487 U.S. at 49, 108 S.Ct. at 2255, Martin was acting

under color of state law in his individual and corporate capacities.

Therefore, the trial court erred in granting the special exceptions addressed to, and striking, the Mitchells' allegations that the Hospital and Martin were acting under color of state law for purposes of section 1983. The first point of error is sustained.

The next question, the subject of the Mitchells' second point, is whether their live trial pleadings alleged the second element of a cause of action under 42 U.S.C. § 1983, *i.e.,* the deprivation of a right, privilege or immunity secured by the Constitution or the laws of the United States. The Due Process Clause of the Fourteenth Amendment, they contend, contains a substantive component that bars certain arbitrary and wrongful government actions regardless of the fairness of the procedures used to implement them. Under this component, a constitutional violation is complete when the wrongful action is taken, and it is actionable under section 1983. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990).

Under the Mitchells' view, to plead a due process violation against a government entity like the Hospital, it was necessary to allege (1) a municipal policy or custom that, (2) when executed or implemented, (3) produced a constitutional tort, and (4) caused injury to the plaintiff. *See City of Amarillo v. Langley,* 651 S.W.2d 906, 913 (Tex. App.—Amarillo 1983, no writ). The existence of policies and customs at the Hospital allowed nurse anesthetists to illegally practice medicine, which were pleaded as follows:

14. On and prior to February 24, 1987, there existed at NWTH a policy that NWTH employee nurse anesthetists (CRNAs) rather than anesthesiologists (M.D.s) were to be called to perform anesthesia for surgeries during the hours between 3:00 p.m. and 7:00 a.m. This was known as the "first call" policy and was followed by NWTH regardless of the seriousness of the surgery scheduled, the condition of the patient to have the surgery or the degree of danger the anesthesia posed to the patient. This "first

call" policy was of monetary benefit to NWTH in that it allowed NWTH to charge the patient for anesthesia services performed by its CRNAs while anesthesiologists (M.D.s) who performed anesthesia at NWTH billed the patient directly for his or her services.

\* \* \* \* \* \*

21. The laws of the State of Texas and the Federal Government prohibit CRNAs, as well as other nurses, from making independent decisions.

22. In order to comply with the above laws and the standards promulgated by the Joint Commission on Accreditation of Hospitals (JCAH), NWTH adopted a written policy regarding the use of CRNAs which stated in pertinent part, "[w]hen the CRNA is working in the immediate absence of an Anesthesiologist, the operating surgeon shall have the responsibility for the medical conduct of the anesthetist."

23. NWTH neither implemented nor had any actual intention of implementing its written policy with regard to medical supervision of CRNAs.

\* \* \* \* \* \*

28. At all relevant times hereto, it was the persistent and wide-spread custom and practice of NWTH to allow CRNAs to formulate anesthetic plans and to prescribe and administer dangerous State and Federally controlled prescription drugs to patients without the supervision of a licensed physician. NWTH had actual or constructive knowledge of that custom and practice.

29. NWTH, through its custom and practice described above, participated in and knowingly allowed and encouraged CRNAs to illegally prescribe, distribute and administer controlled dangerous drugs in direct violation of the Texas Controlled Substances Act, ... Texas Dangerous Drug Act, ... the Texas Pharmacy Act, ... the Medical Practice Act, ...; and the Federal Controlled Substances Act, 21 U.S.C. § 801, *et. seq.*

As a direct result of the lack of medical supervision, a Certified Registered Nurse Anesthetist injected an improper anesthetic drug into Mike Mitchell, causing his death. Then, relying on *Langley*, the Mitchells conclude that "the only question presented is whether the practice of allowing unsupervised nurses to administer anesthesia constitutes a constitutional tort."

It does, they propose, because "it manifests deliberate indifference to the lives and safety of patients at the hospital and it is tantamount to a policy of allowing CRNAs to criminally assault patients." Their proposal is founded on the premise that "government policies and customs which manifest deliberate indifference to the lives and safety of the public violate the due process clause." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact). This deliberate indifference standard has been applied by the federal courts in many other contexts, and the Mitchells suggest that "[p]ublic hospitals also violate the constitution when they manifest deliberate indifference to the lives and safety of their patients." Relying on *Avery v. County of Burke*, 660 F.2d 111 (4th Cir.1981), and *Morrison v. Washington County, Ala.*, 700 F.2d 678 (11th Cir.1983), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), they assert that their "allegations of deliberate indifference to patient safety are, if anything, far stronger than the claims asserted in the above cases" because the custom of utilizing nurse anesthetists to administer anesthesia without any medical supervision created obvious and known risks of injury. Anesthesia involves the injection of deadly drugs into the human body for the very purpose of rendering it unconscious. The proper selection of drugs is critical to the life of the patient. The state itself, they continue, has recognized these risks and sought to protect individuals by prohibiting anyone other than a licensed physician to administer anesthesia. Both state and federal law prohibit non-physicians from prescribing

the deadly drugs used during anesthesia. Finally, they conclude that CRNAs are not qualified to prescribe and administer these drugs without medical supervision and cannot legally do so.

In response, the Hospital and Martin argue that the trial court was correct in granting their special exceptions and dismissing the section 1983 claims because the Mitchells failed to allege the deprivation of a constitutional right, *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and to allege the deprivation resulted from an abuse of governmental power. *Collins v. City of Harker Heights, Tex.*, 916 F.2d 284 (5th Cir.1990), *aff'd*, 503 U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Rankin v. City of Wichita Falls, Tex.*, 762 F.2d 444 (5th Cir.1985). They also contend that the Mitchells are attempting to raise the common law tort of medical malpractice into a constitutional claim under section 1983. *Bradberry v. Pinellas County*, 789 F.2d 1513 (11th Cir.1986).

Subsequent to the parties' original briefings, the United States Supreme Court ruled that "[o]ur cases do not support the [Fifth Circuit] Court of Appeals' reading of an abuse of governmental power separate and apart from the proof of a constitutional violation." *Collins v. Harker Heights*, 503 U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261, 269 (1992). Following this decision and upon leave, the Mitchells filed a supplemental brief, and the Hospital and Martin filed reply briefs.

In their supplemental brief, the Mitchells contend that the decision in *Collins* rejected "the central ground upon which Appellees urged dismissal of [their] civil rights claims." Based upon the authority discussed below, we disagree.

Even though the *Collins* Court disapproved the "abuse of governmental power" standard in Fifth Circuit precedent, the Court affirmed the dismissal of Collins' cause of action under section 1983. The Court held that the city's alleged failure to train its employees, or warn them about the known risks of harm by entering sewer mains through manholes, was an omission that could not be properly characterized as "arbitrary, or conscience-shocking, in a constitutional sense." Collins' claim was analogous to a fairly typical state law tort claim. The city breached its duty of care by failing to provide a safe work environment. 503 U.S. at ——, 112 S.Ct. at 1070, 117 L.Ed.2d at 275.

The Due Process Clause of the Fourteenth Amendment does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. It should not be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law. *Id.*

Similarly, section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties arising out of tort law. *Baker v. McCollan*, 443 U.S. at 146, 99 S.Ct. at 2695. It also does not provide a right to be free of injury whenever a government actor may be characterized as a tortfeasor. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir.1991). In *McCabe v. Nassau County Medical Center*, 453 F.2d 698 (2nd Cir.1971), the Court reasoned that

> [F]ew decisions of doctors or administrators in a public hospital will provide a proper basis for a section 1983 action because such decisions do not usually affect rights secured by the Constitution and laws of the United States.... [M]ere negligence in giving or failing to supply medical treatment alone will not suffice for a section 1983 action. Similarly, the negligent running over of a pedestrian by a United States mail truck or the negligent lopping off of the wrong arm by a surgeon employed in a public hospital would be unfortunate, to say the least, and would give rise to actions based on negligence but would not violate rights protected by section 1983. It is difficult to imagine a case where a valid constitutional claim grows out of negligent medical treatment alone. Where medical treatment of a patient in a public hospital is alleged to be the basis of an invasion of a recognized constitu-

tional right, some other highly unusual factor would seem to be necessary. *Id.* at 704.

■ Although the Mitchells maintain that their injuries were not the result of negligence, but were the result of the Hospital's deliberate decision to allow nurse anesthetists to prescribe and administer anesthesia in violation of state and federal law, their allegations under these facts and circumstances cannot be characterized as arbitrary, or conscience-shocking, in a constitutional sense. *Collins v. Harker Heights,* 503 U.S. at ——, 112 S.Ct. at 1070, 117 L.Ed.2d at 275. Despite their insistence that this cause is one of constitutional proportions, the Mitchells are attempting to turn a medical malpractice tort case into a section 1983 claim. *Godinet v. Thomas,* 824 S.W.2d 632, 633 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Assuming, arguendo, that the practice of allowing nurse anesthetists, or CRNAs, to administer anesthesia violates state or federal law, the Mitchells have alleged a cause of action for negligence per se. State tort law, rather than the substantive due process component of the Fourteenth Amendment, should govern a cause of action for medical malpractice. *Accord, Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977) (medical decision not to order an X-ray or like measures is medical malpractice and the proper forum is state court under the Texas Tort Claims Act).

It follows that the Mitchells have failed to allege the deprivation of a right, privilege or immunity secured by the Constitution or the laws of the United States, and their petition does not state a cause of action under 42 U.S.C. § 1983. Under these circumstances, we cannot fault the trial court for granting the special exceptions and dismissing the claims under 42 U.S.C. § 1983. The second point of error is overruled.

The Mitchells utilize their third-point contention to allege that the court erred in granting special exceptions and striking their section 1983 claim, because their peti-

tion properly stated a cause of action for denial of procedural due process rights under the United States Constitution. They submit that the Hospital and Martin violated procedural due process by failing to use fair procedures in implementing the practice of allowing nurses to illegally prescribe and administer anesthesia. Although the consequences in this case are far more tragic, they also suggest that the procedural violations are not unlike those in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

The due process violations in *Zinermon* arose when Burch was found wandering along a Florida highway appearing to be hurt and disoriented. He was taken to a private health care facility designated by the state to receive patients suffering from mental illness. Later, he was transferred to a public hospital owned and operated by the state as a mental health treatment facility. Upon his arrival, he signed forms for voluntary admission and treatment. 494 U.S. at 118–19, 110 S.Ct. at 979–80.

After his release, Burch instituted a suit in a federal district court against eleven physicians, administrators and staff members of the state hospital alleging that they violated a Florida statute in admitting him as a voluntary patient when they knew or should have known that he was incapable of making an informed decision as to his admission. He also claimed that he was entitled to receive the procedural safeguards provided by Florida's involuntary placement procedure and that his due process rights were violated. *Id.* at 123–24, 110 S.Ct. at 982–83.

In deciding whether his allegations were sufficient to state a claim under section 1983, the United States Supreme Court explained that:

The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 cause of action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected inter-

est in "life, liberty or property" is not itself unconstitutional; what is unconstitutional is the deprivation of such interest without due process of law.... The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Id.* at 125–26, 110 S.Ct. at 983 (citations and footnote omitted).

 Due process is a flexible concept that varies with the particular situation. To determine what procedural protections the Constitution requires in a particular case, the Court weighed several factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 127, 110 S.Ct. at 984 (quoting in part, *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

 In applying this test, the Mitchells propose that life is the substantial private interest which is affected by official action. In this connection, they argue that the risk of erroneous injury or death from the Hospital's and Martin's practice of using unsupervised nurses to administer anesthesia is quite high since MDs are authorized to practice anesthesia and prescribe drugs. The risk of injury was exacerbated by the Hospital's failure to inform surgeons and patients of its practice of using unsupervised nurses. Additional or substitute procedural safeguards would have helped less-

en the risk of injury and would pose no fiscal or administrative burdens on the Hospital. "[N]otifying the patient and the surgeon prior to surgery that an unsupervised nurse would be selecting and administering the anesthetic drugs would at least have allowed the patient to decide whether to accept the risk of such services or go to another hospital." Consent to surgery and anesthesia must be obtained in any event; and therefore, "an explanation of who is going to be administering anesthesia could easily be provided at that time." The Hospital also has no governmental interest in its current practice other than to perpetuate a fraud upon its patients. Hence, these "factors mandate that the Hospital should have provided more process to patients before subjecting them to the dangers of using unsupervised nurses to administer anesthesia." We are not persuaded by their proposal.

Before applying the factors set forth in *Zinermon*, the Mitchells are still required to allege the deprivation of a constitutionally protected life, liberty or property interest. The *Zinermon* Court recognized that Burch's confinement in the state hospital for five months without a hearing or any other procedure infringed a liberty interest. *Id.* 494 U.S. at 131, 110 S.Ct. at 986. In *Parham v. J.R.*, 442 U.S. 584, 600, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), the Court acknowledged that "a child, in common with adults, has a substantial liberty interest in not being confined unnecessarily for medical treatment."

In this cause, the Mitchells alleged that Mike Mitchell was admitted to the Hospital where he was diagnosed as having cardiac tamponade, a condition in which fluid collects between the heart and the pericardium, and that surgery was needed as quickly as possible to drain the fluid. They also pleaded:

35. NWTH [The Hospital] was also aware that MIKE MITCHELL's condition was deteriorating and knew or should have known that, by inducing MITCHELL to rely upon NWTH until his condition made it too late to seek care elsewhere, NWTH effectively deprived

MIKE MITCHELL of the freedom to choose to go elsewhere for such services.

36. At the moment MIKE MITCHELL was taken to surgery he became totally dependent upon NWTH to provide the minimal care necessary to sustain his life. Defendant NWTH was aware of and accepted MITCHELL's dependency upon it. Upon entering surgery, NWTH assumed control of MIKE MITCHELL's very existence.

Continuing, they further pleaded that before being taken into the operating room for the surgery to relieve the cardiac tamponade, Mike Mitchell was asked to sign a consent form agreeing to the surgery.

Considering these allegations, it is important to recognize that unlike *Zinermon* and *Parham*, Mike Mitchell was voluntarily admitted to a public hospital with a heart condition requiring immediate and necessary medical treatment. The Mitchells have not cited any supporting authority for the proposition that the freedom to go elsewhere for medical services is a protected interest under the United States Constitution. Rather, they propose that by notifying the patient and the surgeon of the practice of using unsupervised nurses to select and administer anesthesia, it would allow a patient to decide whether to accept the risk of such services or go to another hospital. This proposal is similar to the theory of informed consent which is based on negligence. Under this theory of tort law, they could not recover unless they proved that Mike Mitchell would not have consented to treatment had he been informed of the undisclosed risk, and that he was injured by the occurrence of the risk of which he was not informed. *See, e.g., Hartfiel v. Owen*, 618 S.W.2d 902, 904–05 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.).

Under these facts and circumstances, the Mitchells have alleged common law negligence, not the deprivation of a constitutionally protected life, liberty or property interest. It being undisputed that Mike Mitchell was asked to sign a consent form before surgery, the Hospital provided due process which, given his condition at the time of admission, was constitutionally adequate. In this light, the trial judge cannot be faulted for granting the special exceptions and dismissing the claims under 42 U.S.C. § 1983. The third point of error is overruled.

■ With their fourth point of error, the Mitchells contend the court erred in granting special exceptions and striking their section 1983 claims for denial of rights secured to them by the federal drug laws because their petition properly stated that cause of action. Deprivations of federal statutory rights carried out under color of state law are also actionable under section 1983, and appellants refer to the deprivation of rights under the National Labor Relations Act, *see Golden State Transit v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), rights under public housing regulations, *see Wright v. Roanoke Redev. & Housing Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), and rights under the Social Security Act. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Specifically, they submit that the Federal Controlled Substances Act "requires persons administering specified controlled substances, including some of the anesthetic drugs administered to Mike Mitchell, to be registered." However, they have not informed us of the portion of the Act upon which they rely.

To determine the availability of section 1983 to remedy a statutory violation, the United States Supreme Court has pronounced this two-step inquiry:

First, the plaintiff must assert the violation of a federal right.... Section 1983 speaks in terms of "rights, privileges or immunities," not violations of federal law. In deciding whether a federal right has been violated, we have considered whether the provision in question creates obligations binding on the governmental unit or rather "does no more than express a congressional preference for certain kinds of treatment." ... The interest the plaintiff asserts must not be "too vague and amorphous" to be "beyond the competence of the

judiciary to enforce." ... We have also asked whether the provision in question was "intend[ed] to benefit" the putative plaintiff....

Second, even when the plaintiff has asserted a federal right, the defendant may show that Congress "specifically foreclosed a remedy under § 1983, ... by providing a "comprehensive enforcement mechanis[m] for protection of a federal right,"....

*Golden State Transit v. Los Angeles*, 493 U.S. at 106, 110 S.Ct. at 448 (citations omitted).

Although the Mitchells have not designated or referred to any portion of the Federal Controlled Substances Act upon which their reliance is placed, we observe that section 823(f) provides, in part, that if practitioners are authorized to dispense or conduct research under the law of the State in which they practice, they shall be registered to dispense or conduct research with controlled substances. Separate registration under this part for practitioners engaging in research with non-narcotic controlled substances, who are already registered under this part in another capacity, shall not be required. Pharmacies (as opposed to pharmacists) when engaged in commercial activities, shall be registered to dispense controlled substances if they are authorized to dispense under the law of the state in which they regularly conduct business. 21 U.S.C. § 823(f).

Additionally, the Act provides that practitioners who dispense narcotic drugs to individuals for maintenance treatment or detoxification treatment shall obtain annually a separate registration for that purpose. The Attorney General shall register an applicant to dispense narcotic drugs to individuals for maintenance treatment or detoxification treatment. 21 U.S.C. § 823(g). A registration to manufacture, distribute, or dispense a controlled substance may be suspended or revoked by the Attorney General. 21 U.S.C. § 824(a).

Considering these provisions, the Mitchells have not asserted a federal right under the Federal Controlled Substances Act. The Act requires that certain manufacturers, distributors and pharmacies of controlled substances be registered by the Attorney General and that periodic reports be submitted, but it neither grants a private right nor provides a cause of action to the Mitchells. Because they have not asserted a federal right, we need not address whether Congress specifically foreclosed a remedy under section 1983 by providing a comprehensive enforcement mechanism for protection of a federal right. *Middlesex Cty. Sewerage Auth. v. Sea Clammers*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). The fourth point of error is overruled.

By their fifth and sixth points, the Mitchells charge the court with error in granting special exceptions and striking their claims for denial of substantive and procedural due process guaranteed by the Texas Constitution, because their petition properly stated these causes of action. Initially, they submit that Texas courts have recognized direct causes of action for deprivation of state constitutional rights. *See Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980); *Jones v. Memorial Hosp. System*, 746 S.W.2d 891 (Tex.App.—Houston [1st. Dist.] 1988, no writ). They offer that "the only question is whether the conduct alleged in the Plaintiffs' petition states a cause of action for deprivation of state due process rights." The provisions in article I, section 19 of the Texas Constitution and the Fourteenth Amendment of the United States Constitution are similar, but the Mitchells argue that the state provision should be given a broader interpretation. *See LeCroy v. Hanlon*, 713 S.W.2d 335 (Tex.1986).

Despite recognition that the individual rights guaranteed in the present constitution reflect Texas' values, customs and traditions, *LeCroy v. Hanlon*, 713 S.W.2d at 339, the Mitchells have not alleged a cause of action for the deprivation of due process rights, substantive or procedural, under article I, section 19 of the Texas Constitution. They have not cited any authority providing for a private cause of action under this constitutional provision, and their reliance on *Steele* and *Jones*

is not well-founded, because neither case recognized a cause of action or remedy under article I, section 19.

In *Bagg v. Univ. of Texas Medical Branch*, 726 S.W.2d 582 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), plaintiff-appellant brought suit against a medical branch of the state university system seeking damages and equitable relief when it terminated him without following disciplinary procedures. He essentially sought relief for denial of due process by citing to both the federal and state constitutions. The court, finding no Texas statute or case that provided a citizen with the kind of redress afforded by 42 U.S.C. § 1983, held that there is no state constitutional tort. *Id.* at 584 n. 1.

Considering this authority and the pleadings in the appellate record before us, we deem the Mitchells have not alleged a cause of action under the due process clause of the Texas Constitution. The trial court, therefore, did not err in granting the special exceptions and dismissing the claims under the Texas Constitution. The fifth and sixth points of error are overruled.

■ When rendering the take-nothing summary judgment in favor of Martin, the court did not specify the ground(s) for its rendition. By attacking the rendition with their seventh point, the Mitchells must show that each independent ground presented in Martin's motion for summary judgment is insufficient to support the judgment, *Insurance Co. of N. Am. v. Security Ins.*, 790 S.W.2d 407, 410 (Tex. App.—Houston [1st Dist.] 1990, no writ), since the judgment will be affirmed if any of the grounds advanced in the successful motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

■ By their seventh-point presentation, the Mitchells have not addressed Martin's summary judgment ground that he did not have a doctor-patient relationship with Mike Mitchell. It is undisputed that a physician-patient relationship was not created between Martin and Mike Mitchell and, absent the relationship, Martin would not be liable for malpractice or negligence. *Wil-son v. Winsett*, 828 S.W.2d 231, 232 (Tex. App.—Amarillo 1992, writ granted).

Notwithstanding, the Mitchells represent that "Martin is not sued in his capacity as a private physician since he had no direct role in providing care to Mike Mitchell. He is sued solely for his wrongful administrative and supervisory acts as an official of [the Hospital]." In this regard, they argue the existence of ample evidence to raise genuine issues of fact regarding Martin's claim that he was not bound by the duties spelled out in his contract with the Hospital.

■ It is unnecessary to decide whether Martin was or, as he claims, was not bound by the contract which expired before Mike Mitchell's surgery. Whether, by virtue of his administrative capacity, he had a duty to ascertain that licensed physicians, rather than CRNAs, administered anesthesia is a question of law for the court. Generally, there is no duty for one to control the conduct of third persons; however, the question of duty is best determined by the consideration of interrelated factors. Important factors are risk, foreseeability, the likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. The most important factor is foreseeability. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990).

■ In his official position, Martin was administering the existing scheduling policy of the Hospital. He did not have authority to change the policy; indeed, he had suggested a change that would have placed anesthesiologists rather than CRNAs on first call, but the anesthesia policy was not changed. Then, according to policy, Martin scheduled CRNA Adamson on first call at the time of Mike Mitchell's surgery. Still, the anesthesia policy further provides that when a surgical procedure is scheduled, the operating surgeon has the option of determining the personnel to administer the anesthesia. Baay made no request for an anesthesiologist.

Understandably, the operating surgeon, who is familiar with the patient and his needs, not only is in the best position to foresee the need for an anesthesiologist, but is the person empowered to make that decision. The consequences of placing that burden on Martin, who was not present for the operation and who could not make the final decision of personnel to administer the anesthesia, would subject him to liability, even though nothing in this record shows he knew or had reason to know that harm would befall Mike Mitchell.

Given the absence of evidence of foreseeability on the part of Martin in applying the *Phillips* factors to this record, the trial court was justified in finding as a matter of law that Martin had no duty to ascertain that an anesthesiologist rather than a CRNA administered the anesthesia to Mike Mitchell. The Mitchells' seventh point of error is overruled.

The trial court erred in granting Martin's motion for summary judgment, the Mitchells contend with their eighth point, because their petition properly alleged legally-recognized common law causes of action against him. In explanation, they charge Martin with the violation of a duty in knowingly assigning a nurse to unlawfully practice medicine on an unsuspecting patient in direct violation of the Texas Medical Practice Act. Tex.Rev.Civ.Stat.Ann. art. 4495b, § 1.01 *et seq.* (Vernon Supp.Pamp.1993). As support, they cite *Central Anesthesia Associates, P.C. v. Worthy,* 254 Ga. 728, 333 S.E.2d 829 (1985), as factually identical to this cause.

The Mitchells do not point out with particularity what provisions of article 4495b they contend were violated, nor why *Worthy* is factually identical. It is not our responsibility to discharge their burden. *Saldana v. Garcia,* 155 Tex. 242, 285 S.W.2d 197, 201 (1955).

Nevertheless, we observe that the *Worthy* court, determining that the Georgia statute regulating who is authorized to administer anesthesia established a standard of care, 333 S.E.2d at 833, held the defendants were guilty of negligence per se when a student nurse, who was not autho-

rized to do so, administered the anesthesia. *Id.* at 831. Inappositely, article 4495b, *supra,* contains in its section 3.06(d) the authorization for a person licensed to practice medicine "to delegate to any qualified and properly trained person" the act of administering dangerous drugs. By subsection (1) of section 3.06(d), there is vested in the Board of Medical Examiners the authority to determine whether any medical act constitutes the practice of medicine, and whether any medical act may be properly or safely delegated by physicians. Section 2.09(j) confers on the Board the right to institute action to enjoin the violations of any provision of the Act, and section 3.07(a) provides that a person practicing medicine in violation of the Act commits a Class A misdemeanor offense.

█ Aside from the reality that the legislature's adoption of a criminal statute does not mean that it is accepted as a standard for civil liability, *Carter v. William Sommerville and Son, Inc.,* 584 S.W.2d 274, 278–79 (Tex.1979), we discern nothing in the Mitchells' pleadings that alleges a common law cause of action against Martin predicated on a violation of article 4495b. In this situation, the trial court did not err in rendering summary judgment. The eighth point of error is overruled.

█ The Mitchells utilize their final point of error to fault the trial court for granting special exceptions and striking their claims for damages suffered prior to the death of Mike Mitchell. The damages sought as legally recoverable were for loss of consortium, mental anguish, and interference with constitutionally protected familial relationships, due to the Hospital's and Martin's "actionable conduct." However, because the Mitchells have not shown actionable conduct upon which to premise the causes of action alleged, any error in granting the special exceptions and striking the claims for damages would be harmless error. *Kelly v. Wright,* 144 Tex. 114, 188 S.W.2d 983, 985–86 (1945). The ninth point of error is overruled.

Accordingly, the final judgment of the trial court is affirmed.